AO 91 (Rev. 11/11) Criminal Complaint　　　　　　　　　　AUSA Jeremy Daniel (312) 469-5314

**FILED**
AUG 24 2018
Magistrate Judge Sidney I. Schenkier
United States District Court

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**INTAKE**
AUG 24 2018

UNITED STATES OF AMERICA

v.

IMRAN MAHMOOD

CASE NUMBER:
UNDER SEAL: 18 CR 519

MAGISTRATE JUDGE SCHENKIER

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about December 11, 2014, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, the defendant violated:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code, Section 1343 | for the purpose of executing a scheme to defraud, the defendant did knowingly cause to be transmitted in interstate commerce by means of wire communications, that is, from Chicago, Illinois to Olathe, Kansas, certain writings, signs, and signals, namely, data relating to the deposit of check number 5159 in the amount of $201,530 from Company A to Accurate Builders Group into International Bank of Chicago bank account number XXXXXX3109, in violation of Title 18, United States Code, Section 1343. |

This criminal complaint is based upon these facts:

  X   Continued on the attached sheet.

_____
NICOLAS AGUADO
Special Agent, Federal Bureau of Investigation (FBI)

Sworn to before me and signed in my presence.

Date: August 24, 2018

_____
Judge's signature

City and state: Chicago, Illinois

SIDNEY I. SCHENKIER, U.S. Magistrate Judge
*Printed name and Title*

| UNITED STATES DISTRICT COURT | |
|---|---|
| NORTHERN DISTRICT OF ILLINOIS | ss |

## AFFIDAVIT

I, NICOLAS AGUADO, being duly sworn, state as follows:

1. I am a Special Agent with the Federal Bureau of Investigation, and have been so employed for eight years. My current responsibilities include the investigation of white collar crime, including mail, wire, and bank fraud.

2. This affidavit is submitted in support of a criminal complaint alleging that IMRAN MAHMOOD has violated Title 18, United States Code, Section 1343. Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint charging MAHMOOD with wire fraud, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that the defendant committed the offense alleged in the complaint.

3. This affidavit is based on my personal knowledge, information provided to me by other law enforcement agents, and information I received through interviews and review of records.

## Background

4. At times material to this Complaint:

   a. According to public records, Company A was headquartered in Roselle, Illinois, with an office located in Chicago, Illinois. Company A was a not-for-

profit company that, among other work, provided homecare services to seniors residing in Illinois. As part of its Community Care Program, the Illinois Department of Aging reimbursed Company A for homecare services provided by Company A in conjunction with the Community Care Program.

b. According to public records, Company B was headquartered in Roselle, Illinois. Among other work, Company B acted as the fiscal agent for Company A in that Company B held the homecare service contracts performed by Company A. Company B received payments from the State of Illinois for services rendered by Company A.

c. According to public records and witness interviews, IMRAN MAHMOOD served as, among other things, an accountant and auditor for Company A and Company B. MAHMOOD, through his company, AUDIT and CONSULTING SERVICES, LTD. ("ACS"), initially provided auditing services to Company A and Company B, then transitioned to providing accounting and other bookkeeping services. As bookkeeper, MAHMOOD had access to Company A's and Company B's accounting systems and was responsible for reconciling Company A's and Company B's bank accounts. ACS was headquartered in Chicago, Illinois, with an office located in Chicago, Illinois.

d. According to public records and witness interviews, MAHMOOD served as the registered agent for Company A and Company B.

e. According to public records and witness interviews, MAHMOOD owned and operated Accurate Builders Group, Ltd. ("ABG"). ABG was headquartered

in Chicago, Illinois, with an office located in Chicago, Illinois. Among other work, ABG provided construction services such as remodeling, repairs, and maintenance. ABG used sub-contractors to perform the construction services.

      f.      According to public records and witness interviews, MAHMOOD owned and operated Accurate Consulting Enterprise Group, Ltd. ("ACEG"). ACEG was headquartered in Chicago, Illinois, with an office located in Chicago, Illinois. Among other work, ACEG provided tax services, to include the preparation of IRS Form 990 annual tax returns for Company A.

### The Scheme to Defraud

5.      According to public records, Company A and Company B filed a complaint against MAHMOOD, ABG, and ACEG in the Circuit Court of Cook County. The lawsuit alleges that MAHMOOD, ABG, and ACEG fraudulently issued a series of checks and transfers from accounts held by Company A and Company B totaling approximately $2,000,000. The lawsuit is pending.

6.      I have reviewed bank records for accounts held by Company A.

      a.      I identified 68 checks drawn on accounts held by Company A at Associated Bank, Citizens Bank (formerly known as Charter One Bank), and U.S. Bank, and payable to ABG between February 2011 and May 2015. These checks, which were deposited into ABG's International Bank of Chicago bank account numbers XXXXXX2455 and XXXXXX3109, totaled $9,084,984. This includes the 6 checks drawn on Company A's accounts identified in the lawsuit filed by Company A and Company B.

b. According to an investigative report, an investigator with the State of Illinois Office of Executive Inspector General interviewed MAHMOOD on December 12, 2014. MAHMOOD's attorney was present for the interview. When asked whether MAHMOOD owned ABG, MAHMOOD told the investigator that he was the sole owner of ABG, that ABG does construction work such as remodeling, repairs, and maintenance, and that all work is done by subcontractors. MAHMOOD also told the investigator that ABG had not performed any work for either Company A or Company B.

c. One of the 68 checks drawn on an account held by Company A and deposited into the account of ABG was check number 5159. Check number 5159, which was dated December 3, 2014, was drawn on Company A's U.S. Bank account. According to a U.S. Bank employee, the servers used to electronically process checks drawn on accounts held at U.S. Bank are located in Olathe, Kansas. International Bank of Chicago has branches in Illinois and New York.

7. I have reviewed bank records for accounts held by Company B. I identified 3 checks drawn on accounts held by Company B and payable to ACEG between March 2015 and May 2015, which totaled $604,750. According to the lawsuit filed by Company A and Company B, Company B did not authorize these payments.

8. Together, the checks drawn on Company A's and Company B's accounts totaled $9,689,734. Based on Company A's and Company B's claims in the lawsuit, and based on MAHMOOD's statement that ABG did not do any work for either

Company A and Company B, neither MAHMOOD, ABG, nor ACEG was entitled to the $9,689,734 in payments.

**The Proceeds of the Scheme to Defraud**

9. According to financial records, the $9,689,734 was deposited into accounts held by either ABG or ACEG at International Bank of Chicago and JPMorgan Chase.

10. Based on my review of those financial records, more than $4,000,000 of the $9,689,734 was used to pay for the purchase of and improvements to the real property owned by MAHMOOD and commonly known as 9 Blossom Court, South Barrington, Illinois, 60010 (the "Subject Premises").

    a. The legal description for the Subject Premises is:

LOT 20 IN MAGNOLIA POINTE OF SOUTH BARRINGTON SUBDIVISION, BEING A SUBDIVISION OF PART OF THE SOUTHEAST QUARTER OF SECTION 34, TOWNSHIP 42 NORTH, RANGE 9 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS, ACCORDING TO THE PLAT THEREOF RECORDED 11-30-94 AS DOCUMENT 04-005463 IN COOK COUNTY ILLINOIS

Property Index Number 01-34-404-014-0000

    b. According to a HUD-1 settlement statement printed December 30, 2011, MAHMOOD purchased the Subject Premises for $1,470,000.

    c. According to financial records, on or about December 29, 2011, MAHMOOD transferred $495,230 from ABG's International Bank of Chicago bank account number XXXXXX2455 as down payment for the purchase of the Subject Premises. In the months prior to this transfer, between August 8, 2011 and December

19, 2011, MAHMOOD deposited check numbers 10014, 10018, 10020, 10021, and 5003, all of which were drawn on Company A's payroll account held at Charter One Bank, account number XXXX8799, into ABG's International Bank of Chicago bank account number XXXXXX2455. The total amount of check numbers 10014, 10018, 10020, 10021, and 5004 was $495,690.

   d. According to the HUD-1 settlement statement and financial records, on or about December 30, 2011, MAHMOOD transferred $342,720 from ABG's JP Morgan Chase account XXXXX2867 as down payment. Earlier that month, MAHMOOD transferred $338,720 from ABG's International Bank of Chicago bank account number XXXXXX2455 to ABG's JP Morgan Chase account XXXXX2867.

   e. A warranty deed for the Subject Premises recorded January 13, 2012, lists MAHMOOD as the owner of the Subject Premises.

   f. According to records received from the Illinois Secretary of State, MAHMOOD's driver's license lists the Subject Premises as MAHMOOD's residence.

   g. According to a contract between MAHMOOD and a general contractor, MAHMOOD agreed to pay $4,023,341 for construction work on the Subject Premises.

   h. According to a net-equity analysis conducted November 23, 2016, the Subject Premises had an appraised value of $2,500,000. According to public records, U.S. Bank placed a mortgage lien on the Subject Premises for $1,300,000 on August 2, 2016. As of November 2016, the net equity in the Subject Premises was $1,021,358.

## Conclusion

11. Based on the above information, there is probable cause to believe that, for the purpose of executing a scheme to defraud, MAHMOOD did knowingly cause to be transmitted in interstate commerce by means of wire communications, that is, from Chicago, Illinois to Olathe, Kansas, certain writings, signs, and signals, namely, data relating to the deposit of check number 5159 in the amount of $201,530 from Company A to Accurate Builders Group into International Bank of Chicago bank account number XXXXXX3109, in violation of Title 18, United States Code, Section 1343.

    a. It was part of the scheme that, in order to fraudulently obtain money belonging to either Company A or Company B, MAHMOOD printed checks, payable to either ABG or ACEG, drawn on bank accounts held by either Company A or Company B. At the time MAHMOOD printed those checks, he knew that he was not entitled to the amounts set forth on those checks.

    b. It was further part of the scheme that MAHMOOD deposited the checks in his business accounts and then transferred the funds from those checks to other accounts for his own use knowing that the payments were not authorized by Company A or Company B and that he was not entitled to the payments.

c. It was further part of the scheme that MAHMOOD misrepresented, concealed, and hid, and caused to be misrepresented, concealed, and hidden, the existence of the scheme, the purpose of the scheme, and the acts done in furtherance of the scheme.

FURTHER AFFIANT SAYETH NOT.

_____
NICOLAS AGUADO
Special Agent, Federal Bureau of Investigation

SUBSCRIBED AND SWORN to before me on August 24, 2018.

_____
SIDNEY I. SCHENKIER
United States Magistrate Judge

8